### JOHNS *v.* PATTERSON.

Opinion delivered July 5, 1920.

MASTER AND SERVANT—ENTICING AWAY SERVANT.—One does not become liable for damages for enticing a servant from his master's employment where he hires a servant who had quit his master's service, though he continued to sleep on the master's farm.

Appeal from Mississippi Circuit Court, Osceola District; *F. Kirsch*, Special Judge; reversed.

STATEMENT OF FACTS.

This is a statutory action brought by H. C. Patterson against F. Johns, to recover damages for enticing Nathan Meyers to leave his employment. This is the second appeal in the case. Upon the former appeal it was held that, after the servant has of his own accord left the service of his master and while he is out of such service, he can not be enticed from it and can not be knowingly hired while he is in such service. *Johns v. Patterson*, 138 Ark. 420.

According to the record in the present appeal, H. C. Patterson made a contract with Nathan Meyers to make a crop for him on the shares during the year 1918. About the middle of May there was a wet spell so that the crop could not be worked, and Patterson had his men in the

field cleaning out ditches. Meyers went to Patterson and asked him for $4 to send to his mother. Patterson told him to fall in and help clean out the ditches and he would have $4 coming to him on Saturday night. Meyers refused to do this, and Patterson told him to clear an acre of land and he would get $10 for that. Meyers refused to do this and left the farm. He sought and obtained employment from F. Johns. He continued to sleep on the farm of Patterson for some days after he was hired by Johns. The following week Patterson saw Meyers in Luxora working for Johns and told Meyers he wanted him to show up at his place on Thursday morning. At that time Meyers showed up and Patterson told him to catch a team and go to work. Meyers told Patterson that he wanted his account, and that he did not intend to work for him any more. Patterson replied that he did not want Meyers to pay his account; that he wanted his work, and that he did not know where he could get labor to work his crop at that time of the year. The above is the version of the transaction testified to by Patterson. Patterson further stated that at the trial in the justice court he told Johns that Meyers had been employed by him to make a crop, and Johns replied that he knew that, because for a week after he had employed him Meyers came back to the Patterson farm and slept every night. According to the testimony of F. Johns, he did not do or say anything to induce Meyers to leave the service of Patterson, and did not hire Meyers until after he had left Patterson's service.

Meyers was a witness for Johns, and testified that he had quit the service of Patterson before he hired to Johns. He said that his crop had been drowned out by two overflows, and that he thought it was too late to plant again. He offered to pay Patterson his account, but the latter refused to take it and tried to make him go to work again. This Meyers refused to do and said that he had quit Patterson of his own accord.

The jury returned a verdict for Patterson, and judgment was rendered accordingly.

*J. T. Coston,* for appellant.

The evidence does not support the verdict. Johns did not entice Meyers to leave his employment. He had already quit the service of Patterson at the time he hired to Johns, and Johns did not induce him or entice him to quit, and appellant was not liable. The court erred in its instructions. 123 Fed. 676; U. S. Comp. Stat., § 3944; 97 S. W. 453; 182 *Id.* 527; 50 S. E. 921-2; 50 *Id.* 921; 210 S. W. 778.

*W. J. Driver,* for appellee.

The only question was one of *fact,* and the jury were properly instructed, and the verdict is conclusive.

HART, J. (after stating the facts). It is insisted by counsel for Johns that the evidence does not support the verdict, and in this contention we think counsel is correct. Meyers testified that he had quit the service of Patterson at the time he hired to Johns. According to his testimony, Johns did not have anything to do with inducing him to quit Patterson. His testimony in this respect is corroborated by that of Johns. Johns testified that he had never seen Meyers before he hired him and did not know he was working for Patterson. On cross-examination he testified that he did not state in the justice court that he knew the negro was working on the Patterson farm. Patterson testified that Johns stated in the justice court that he knew the negro had been working on the Patterson farm at the time he hired him. It is claimed by counsel for Patterson that this testimony was sufficient to carry the case to the jury. We do not think so. Even if Johns knew that Meyers had been working on the Patterson farm, he would not be liable for damages under the statute unless he enticed the servant away from the service, or knowingly hired him while in the service.

The undisputed evidence shows that Meyers had left the service of Patterson at the time he hired to Johns, and the mere fact that he still slept on the farm

of Patterson did not continue him in Patterson's employment.

It follows that the judgment must be reversed; and, inasmuch as the case has been fully developed, it will be dismissed. It is so ordered.